FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 12, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONDA S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Commissioner of Social Security, <br><br> Defendant. | No. 4:18-CV-05157-EFS <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are cross-summary-judgment motions, ECF Nos. 14 & 19. Plaintiff Ronda S. appeals the Administrative Law Judge's (ALJ) denial of benefits.[2] Plaintiff contends the ALJ erred by: (1) improperly rejecting the opinions of Plaintiff's medical providers; (2) improperly rejecting Plaintiff's subjective testimony; and (3) failing to meet his step five burden.[3] The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.[4] After reviewing the record and relevant authority, the Court is fully

---

[1] To protect the privacy of social-security plaintiffs, the Court refers to them by first name and last initial. *See* LCivR 5.2(c). When quoting the Administrative Record in this order, the Court will substitute "Plaintiff" for any other identifier that was used.
[2] ECF No. 1.
[3] ECF No. 14 at 10.
[4] ECF No. 19.

informed. For the reasons set forth below, the Court grants the Commissioner's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## I. <u>Standard of Review</u>

On review, the Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.[5] "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] The Court will also uphold "such inferences and conclusions as the [ALJ] may reasonably draw from the evidence."[7]

In reviewing a denial of benefits, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision.[8] That said, the Court may not substitute its judgment for that of the Commissioner. If the evidence supports more than one rational interpretation, a reviewing court must uphold the ALJ's decision.[9] Further, the Court "may not reverse an ALJ's decision on account of an error that is harmless."[10] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination,"[11] and where the reviewing court "can confidently

---

[5] *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987).
[6] *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).
[7] *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
[8] *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).
[9] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
[10] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
[11] *Id.* at 1115 (quotations and citation omitted).

conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."[12]

## II. <u>Facts, Procedural History, and the ALJ's Findings</u>[13]

Plaintiff Ronda S. is 54 years old and lives in Richland, Washington. Plaintiff filed an application for social security disability and supplemental social security income on January 8, 2014, alleging a disability onset date of March 7, 2012.[14] Plaintiff's claim was denied initially and upon reconsideration.[15] Plaintiff requested a hearing before an ALJ on November 21, 2014, which was held on August 29, 2016.[16] Plaintiff and another impartial vocational expert appeared and testified at a supplemental hearing held on August 1, 2017.[17] On August 30, 2017, ALJ Glenn G. Meyers rendered a decision denying Plaintiff's claim.[18]

At step one,[19] the ALJ found Plaintiff had not engaged in substantial gainful activity since March 7, 2012, the alleged onset date.[20]

At step two, the ALJ found Plaintiff had the following severe medical impairments: cervical spine degenerative disc disease/spondylosis, status post laminectomy; status post bilateral carpal tunnel releases; chronic obstructive

---

[12] *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citation omitted).
[13] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.
[14] AR 15.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] AR 30.
[19] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 16–17, and the Court presumes the parties are well acquainted with that standard process. As such, the Court does not restate the five-step process in this order.
[20] AR 17.

pulmonary disease (COPD)/asthma; chronic kidney disease; obesity; affective disorders variously diagnosed as depressive, dysthymic and mood disorders; anxiety disorders variously diagnosed as anxiety and panic; and a personality disorder with possible cluster B features.[21]

At step three, the ALJ found that Plaintiff did not have an impairment that met the severity of a listed impairment.[22]

At step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work.[23] The ALJ found that Plaintiff requires a sit/stand option in the workplace such that she can intermittently sit, stand, and walk throughout the workday.[24] She can occasionally stoop, squat, and climb ramps and stairs.[25] She can never crouch, crawl, kneel, or climb ladders, ropes, or scaffolds.[26] She may frequently handle, finger, and feel with her upper extremities.[27] She must avoid concentrated exposure to temperature extremes and pulmonary irritants such as dust, fumes, odors, and gases.[28] She can engage in unskilled, repetitive, routine tasks in two-hour increments, and may engage in incidental contact with the public.[29] She can work in proximity to but not in coordination with coworkers, and can have occasional contact with supervisors.[30] She requires the flexibility to be off

---

[21] *Id.*
[22] AR 18.
[23] AR 20
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] AR 20.
[29] *Id.*
[30] *Id.*

task up to 15% of the time while still meeting minimum production requirements, as well as the flexibility to be absent up to one time per month.[31]

In reaching these conclusions, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.[32] However, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence presented in the record.[33]

When determining Plaintiff's RFC, the ALJ examined several opinions by both acceptable and non-acceptable medical sources. When evaluating Plaintiff's physical impairments, the ALJ afforded some evidentiary weight to Dr. Staley's state agency assessment, and less weight to the opinions of Dr. Prakash and Dr. Mascal.[34] He also assigned little weight to Nurse Michels' May 2013 assessment and Nurse Williams' August 2016 assessment.[35] When evaluating Plaintiff's mental impairments, the ALJ assigned some weight to Dr. Bailey's and Dr. Lewis' state agency psychological assessments, but little weight to their opinions regarding Plaintiff's ability to concentrate and capacity to tolerate working with others.[36] The ALJ afforded little weight to Dr. Kouzes' July 2012 DSHS assessment; Dr. Moon's May 2013 DSHS assessment with Dr. Johnson's accompanying review; Dr. Marks' April 2014 DSHS assessment with Dr. Mitchell's accompanying review; Dr. Genthe's

---

[31] *Id.*
[32] AR 22.
[33] *Id.*
[34] AR 25.
[35] AR 26.
[36] AR 27.

1  February 2016 DSHS assessment; and other low Global Assessment of Functioning

2  ("GAF") scores.[37]

3  At step five, the ALJ found Plaintiff was not able to perform any past relevant work, including her jobs as a home attendant, retail sales clerk, and trailer court manager.[38] However, given her age, education, work experience, and RFC, the ALJ found there exist significant numbers of jobs that Plaintiff could perform.[39]

7  The ALJ issued his decision to deny Plaintiff benefits on August 30, 2017.[40] The Appeals Council denied Plaintiff's request for review,[41] making the ALJ's decision the Commissioner's final decision for the purposes of judicial review.[42] Plaintiff filed this lawsuit on September 23, 2018.[43]

### III.   Applicable Law & Analysis

#### A. The ALJ properly weighed the opinions of Plaintiff's examining and non-examining psychologists.

The ALJ assigned little weight to Plaintiff's examining DSHS psychologists Dr. Genthe, Dr. Moon, Dr. Marks, and Dr. Kouzes.[44] The ALJ also assigned little weight to non-examining state agency psychologist Dr. Staley, and some weight to Dr. Lewis and Dr. Bailey.[45] The Court finds substantial evidence exists to support the ALJ's conclusions. "[W]hatever the meaning of 'substantial' in other contexts, the

---

[37] *Id.*
[38] AR 28.
[39] AR 29.
[40] AR 30.
[41] AR 1.
[42] *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.
[43] ECF No. 1.
[44] AR 27.
[45] AR 25, 27.

threshold for such evidentiary sufficiency is not high . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[46]

i. <u>Standard of Review</u>

There are three types of medical expert physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (non-examining physicians).[47] An opinion of an examining physician is generally entitled greater weight than that of a non-examining physician.[48] The Commissioner must provide "clear and convincing" reasons for rejecting the *uncontradicted* opinion of an examining physician.[49] If the opinion is contradicted, the ALJ must give "specific and legitimate reasons that are supported by substantial evidence in the record."[50] A non-examining physician's opinion may amount to substantial evidence if it is "consistent with other independent evidence in the record."[51]

ii. <u>The ALJ properly weighed the opinions of Plaintiff's DSHS examining psychologists.</u>

Plaintiff alleges the ALJ improperly weighed the opinions of her examining DSHS psychologists.[52] When rejecting the DSHS psychologists' opinions, the ALJ stated that they were inconsistent with Plaintiff's mental health treatment history

---

[46] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).
[47] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).
[48] *Id.* (citations omitted).
[49] *Id.*
[50] *Id.* at 830–31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).
[51] *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).
[52] ECF No. 14 at 12–17. The Court notes that the ALJ only rejected the July 2012 opinion by Dr. Kouzes, not the December 2012 opinion. *See* AR 28.

and her performance on mental status examinations, and appeared to be partially situational in nature.[53] The opinions of Dr. Moon, Dr. Marks, and Dr. Genthe, as well as Dr. Kouzes's July 2012 opinion, that Plaintiff had marked limitations in her abilities to work conflict with Dr. Kouzes's December 2012 opinion.[54] Accordingly, the ALJ must give specific and legitimate reasons to discount the examining physicians' opinions that are supported by substantial evidence in the record.[55]

The ALJ first rejected the opinions because they were inconsistent with Plaintiff's treatment history. Although "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability,"[56] impairments that can be controlled effectively with medication are not disabling.[57] The ALJ also found that the opinions were inconsistent with Plaintiff's mental status examinations.[58]

Substantial evidence exists to support the ALJ's finding that Plaintiff's anxiety and depression symptoms were "adequately controlled" by treatment and partially situational in nature. In July 2012, Plaintiff reported as being "sad and depressed," and incapable of holding down a job.[59] However, in December 2012, Plaintiff was seeing a counselor and taking medication and reported that "things [were] better" than they were in July 2012.[60] In the same report, she stated "The

---

[53] AR 27–28.
[54] *See id.* (comparing opinions and indicating that Dr. Kouzes' December 2012 opinion reflected only moderate functional limitations).
[55] *Lester*, 81 F.3d at 831.
[56] *Id.* at 833.
[57] *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).
[58] AR 27–28.
[59] AR 395.
[60] AR 828.

anxiety has gotten a lot better. I [d]on't have panic attacks as severely or as often. I can go out no[w]. I don't have uncontrollable outbursts."[61] She also added that her counseling "helped [her] with [her] anxiety and depression."[62] In January 2013, her physician stated Plaintiff had "[g]ood improvement noted since starting [buprorion] daily."[63] She was taking buprorion in November 2013 "which [was] working well."[64] In December 2013, Plaintiff was taking buprorion and was reported as being "negative for anxiety and depression."[65] In February 2014, Plaintiff presented as being "negative for anxiety, depressed mood, [and] depression," and stated that there "was improvement of initial symptoms."[66]

In May 2015, Plaintiff reported that her prescribed diazepam "helped manage her anxiety."[67] Although Plaintiff reported in October 2015 that she experienced "anxiety in social situations," she again endorsed that her diazepam "is helpful with her anxiety."[68] In November 2015, she reported "an improvement in her mood" and was "taking her medication as prescribed."[69] She "denie[d] any problematic anxiety since [her] last office visit" in October 2015.[70]

In December 2015, Plaintiff reported "feeling sad."[71] However, she agreed that her stress and anxiety was due to stresses with her living and financial situation,

---

[61] AR 829.
[62] AR 450.
[63] AR 492.
[64] AR 543.
[65] AR 552–53.
[66] AR 593–95 (noting buprorion prescribed at 150 mg every 12 hours).
[67] AR 703.
[68] AR 659–60.
[69] AR 656.
[70] *Id.*
[71] AR 672.

and stated she used diazepam to combat the anxiety.[72] Further, when Plaintiff reported feeling depressed and anxious in January 2016 she again acknowledged her "ongoing housing issues" as "stressors affecting her mood."[73] Although she reported depression and anxiety in August 2016, she reported "some improvement in her mood since starting [Lexapro]" and was "not crying as frequently."[74] Her physician reported that "her affect [was] brighter" and aligned with her reported improved mood.[75] Plaintiff requested to continue on the Lexapro.[76]

The record reflects that Plaintiff's anxiety and depression were controlled by medication and situationally based, which are specific and legitimate reasons to discount the physicians' opinions.[77] Accordingly, the ALJ did not err in assigning weight to the opinions of Dr. Moon and Marks, as well as Dr. Kouzes' July 2012 opinion.

Additionally, the ALJ properly rejected Dr. Genthe's February 2016 DSHS opinion for specific and legitimate reasons. The ALJ noted Dr. Genthe's opinion stated her impairments would last for a period of six to nine months.[78] Under the Social Security regulations, unless the impairment is expected to result in death, the

---

[72] *Id.*
[73] AR 814.
[74] AR 1091, 1093.
[75] AR 1093.
[76] *Id.* The Court notes that in June 2017 Plaintiff reported to her provider that she stopped taking the Lexapro because she was experiencing side effects and believed she "felt more depressed." AR 1089. However, on that same visit Plaintiff also stated she had increased her buproprion, which the record reflects helped treat her symptoms. *See, e.g.*, AR 543.
[77] The Court notes the ALJ cited several examples of Plaintiff's "largely unremarkable" mental status examinations as a reason for discounting the testimony. *See* AR 28. Because the ALJ offered other specific and legitimate reasons for discounting the testimony, the Court does not address this reason.
[78] AR 28; *see also* AR 848.

impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."[79] The ALJ properly afforded Dr. Genthe's opinion less weight.

Finally, the ALJ appropriately afforded Dr. Kouzes' December 2012 opinion more weight than the July 2012 opinion. The ALJ first reasoned that the July 2012 opinion lacked a function-by-function assessment.[80] Further, the ALJ noted that the December 2012 opinion reflected improvement of Plaintiff's depression and anxiety with treatment, and an impairment that may be controlled effectively by medication is not disabling.[81] As analyzed *supra*, Plaintiff's improvement with medication and Dr. Kouzes' assessment that Plaintiff's conditions as treated presented only "moderate" limitations is consistent with the record as a whole.[82] Accordingly, the ALJ properly afforded Dr. Kouzes' December 2012 opinion more weight than the July 2012 opinion.

    iii.    <u>The ALJ properly weighed the opinions of Plaintiff's non-examining psychologists.</u>

Non-examining physicians carry the least weight of all physicians.[83] Even so, state agency medical and psychological consultants are "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."[84] ALJs must consider their opinions and "articulate how they considered them in the decision."[85] To reject the opinion of a non-examining

---

[79] 20 C.F.R. § 404.1509.
[80] AR 28.
[81] *Warre*, 439 F.3d at 1006.
[82] *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4).
[83] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).
[84] SSR 17-2p.
[85] *Id.*

physician, the ALJ must refer to "specific evidence in the medical record."[86] However, the ALJ need not repeat the specific evidence in multiple parts of the opinion, so long as "the agency's path [of analysis] may reasonably be discerned."[87]

The ALJ properly weighed the opinions of state agency psychologists Dr. Bailey and Dr. Lewis. The ALJ first reasoned that Plaintiff's symptoms of anxiety and depression were adequately controlled by medication, which is supported by the record as outlined *supra*.[88] Additionally, the ALJ cited specific evidence in the record to refute Dr. Bailey's and Dr. Lewis' opinions that her concentration would occasionally wane due to depression and that she was incapable of working closely with others without distraction.[89] The ALJ cited several examples in the medical record that reflect appropriate cognition, concentration, insight, judgment, and memory, as well as a pleasant and cooperative attitude.[90] Accordingly, the ALJ properly weighed the opinions of Dr. Bailey and Dr. Lewis.

Finally, the ALJ properly rejected Dr. Staley's opinion that Plaintiff was limited to occasional handling, fingering, and feeling.[91] The ALJ limited Plaintiff to "frequent" handling, fingering, and feeling instead of Dr. Staley's opined "occasional" because Plaintiff benefitted from medical treatment such as injections and bilateral carpal tunnel releases.[92] Although the ALJ does not cite specific medical evidence *in*

---

[86] *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).
[87] *Molina*, 674 F.3d at 1121 (internal quotations omitted).
[88] AR 27.
[89] *See id.*
[90] *See id.* (citing, *e.g.*, AR 789, 810, 814, 984 (mental status exams reflecting normal concentration, judgment, and pleasant and cooperative affect)).
[91] *See* AR 25.
[92] *Id.*

*the same paragraph*, he cites several specific examples from the record in a prior section regarding Plaintiff's carpal tunnel.[93] For example, the ALJ noted that Plaintiff "had improvement in her arm symptoms after receiving a cervical steroid injection."[94] The ALJ also noted that Plaintiff had improvement in both hands following carpal tunnel release surgery, which Plaintiff confirmed in her hearing testimony.[95] Plaintiff provides her own interpretation of the evidence, stating that it necessitates an "occasional" limitation.[96] However, where there are multiple rational interpretations, the Court upholds the ALJ's opinion.[97] Accordingly, the Court finds the ALJ properly weighed Dr. Staley's opinion.

**B. The ALJ properly weighed the "other" sources Louise Michels, ARNP and Serena Williams, ARNP.**

For claims filed prior to March 27, 2017, nurse practitioners are not considered acceptable medical sources.[98] Plaintiff's claim was filed on January 8, 2014.[99] Nurse practitioners Michels and Williams are therefore considered "other" sources or "lay witnesses." "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent

---

[93] *See* AR 22–23.
[94] AR 23 (citing AR 616). *See also* AR 646 (noting that the cervical epidural steroid injection "provided significant relief for 6+ months").
[95] *See* AR 23 (citing AR 936 (Plaintiff "report[ed] improvement" form release surgery); AR 96 (when asked by the ALJ "whether or not [her] wrists were improved after surgery," Plaintiff responded "I believe they have improved. I'm still really—I've built up my strength again")). Although Plaintiff states that she experienced pain after surgery, the records reflect that she felt this pain near the site of the surgical incision. *See* AR 643–44. She admitted to her doctor that "she always heals slowly" and her physician opined that her pain would improve if given more time to heal. AR 644.
[96] ECF No. 14 at 15–16.
[97] *Molina*, 674 F.3d at 1111.
[98] 20 C.F.R. § 404.1502(a)(7).
[99] AR 15.

evidence that the ALJ must take into account."[100] The ALJ may not disregard competent lay witness testimony without comment and therefore must give specific, germane reasons for disregarding the testimony.[101] Inconsistency with medical evidence is a germane reason.[102] Further, an ALJ may accept parts of lay witness testimony that he feels are "consistent with the record of [Plaintiff's] activities and the objective evidence in the record," and may "reject portions of [lay witness] testimony that [do] not meet this standard."[103] The ALJ may also reject a lay witness opinion that contains an internal conflict.[104]

The ALJ presented germane reasons for affording little weight to Nurse Michels and Nurse Williams' opinions as to Plaintiff's restrictions due to neck pain and her respiratory condition. First, the ALJ stated that their opinions were inconsistent with the medical evidence, which is a germane reason that is supported by substantial evidence in the record.[105] Second, the ALJ reasoned that Nurse Michels' opinion was based in part on Plaintiff's alleged back pain, but "the record does not establish any medically determinable back impairment."[106] The ALJ also discounted Nurse Williams' opinion that Plaintiff was limited to sedentary work

---

[100] *Molina*, 674 F.3d at 1114.
[101] *Id. See also Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).
[102] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).
[103] *Id.*
[104] *See Molina*, 674 F.3d at 1111–12.
[105] *Bayliss*, 427 F.3d at 1218. As analyzed *supra*, Plaintiff's carpal tunnel symptoms improved with medical treatment. The ALJ also cited several other instances that contradicted Nurse Michels and Nurse Williams' opinions. *See* AR 26 (citing *e.g.,* AR 532, 612 (rating cervical pain as mild); 550, 612 (normal gait and range of motion); 617, 646 (improvement with cervical injections); 550, 618 (no respiratory distress); 532, 604 (respiratory condition improved with treatment); 552 (respiratory condition diagnosed as mild)).
[106] AR 26.

because it was based on an opinion that did not warrant such restrictive limitations.[107] All reasons are germane and supported by substantial evidence.

Plaintiff argues the ALJ improperly rejected Nurse Michels' 2013 assessment that Plaintiff was moderately to markedly limited due to her depression because he provided no reasoning for the rejection.[108] "An ALJ must explain why he has rejected uncontroverted medical evidence."[109] However, he "need not discuss *all* evidence presented to [him]. Rather [he] must explain why significant probative evidence has been rejected."[110] Nurse Michels' opinion that Plaintiff was moderately to markedly limited due to her depression was not uncontroverted medical evidence. Her opinion conflicted with Dr. Kouzes' December 2012 opinion and the record reflects that Plaintiff's depression was adequately controlled with medication. Further, her opinion as to Plaintiff's depression was neither significant nor probative, as Nurse Michels offered no explanation for the limitations she opined, [111] and the ALJ properly weighed several other opinions that contained significantly more detail and reasoning as to their findings. Accordingly, the ALJ did not err in failing to provide reasons for rejecting Nurse Michels' 2013 opinion regarding Plaintiff's depression.

/

/

---

[107] *Id. Compare* AR 1050 (Nurse Michel's opinion that Plaintiff could only lift 10 pounds maximum was based on the opinion of Mark Johnson, PT) *with* AR 1052 (opinion of Mark Johnson stating that Plaintiff may lift up to 30 pounds from waist to floor height and 15 pounds from waist-to-crown height).
[108] *See* ECF No. 14 at 15.
[109] *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).
[110] *Id.* at 1394–95 (emphasis in original).
[111] *See* AR 476–78.

**C. The ALJ properly discredited Plaintiff's subjective complaints.**

Plaintiff argues the ALJ offered improper reasons for discrediting Plaintiff's subjective complaints and testimony regarding the severity of her symptoms.[112] The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.[113] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[114] In the present case, because the ALJ determined Plaintiff's medical impairment could "reasonably be expected to cause the alleged symptoms," she has met step one.[115]

"If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[116] The ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony."[117] General findings are insufficient.[118] Courts may not second-guess ALJ findings that are supported by substantial evidence.[119]

In making an adverse credibility determination, the ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

---

[112] ECF No. 14 at 17–19.
[113] *Molina*, F.3d at 1112.
[114] *Id.* (internal quotations and citations omitted).
[115] AR 22.
[116] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).
[117] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and quotations omitted).
[118] *Lester*, 81 F.3d at 834.
[119] *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity, and effect of the claimant's condition.[120]

The ALJ discredited Plaintiff's subjective testimony because it was not substantiated by medical evidence and her symptoms were in part situational by nature.[121] An ALJ may reasonably discount a claimant's allegations if they "do not comport with objective evidence in her medical record."[122] However, the ALJ may not solely discredit a Plaintiff's testimony because it conflicts with objective medical evidence[123]—thus, the ALJ must give other specific, clear, and convincing reasons supported by substantial evidence.

The ALJ cited several specific reasons why Plaintiff's allegations conflicted with the objective medical evidence, including dozens of examples in the medical records of Plaintiff's unremarkable physical functioning and improvement of Plaintiff's mental health symptoms with treatment.[124] Additionally, the ALJ cited several instances throughout the opinion that show Plaintiff's mental health issues were in part situational in nature.[125] Further, an ALJ may disregard a claimant's pain testimony if she stopped working for reasons other than her impairments.[126] The ALJ highlighted that Plaintiff worked as a caregiver for her mother until her passing in March 2012, on the same date on which Plaintiff claimed she became

---

[120] *Id.* at 958–59.
[121] AR 22, 25.
[122] *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).
[123] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).
[124] AR 22–25.
[125] *See* AR 25–28. *See also, e.g.*, AR 468, 494, 672, 808–09, 814.
[126] *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

1 disabled, and expressed desire to return to work.[127] The ALJ properly discounted
2 Plaintiff's subjective testimony.

**D. The ALJ did not err at step five.**

At step five, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite their identified limitations.[128] At an administrative hearing, an ALJ may solicit vocational expert testimony as to the availability of jobs in the national economy.[129] A vocational expert's testimony may constitute substantial evidence of the number of jobs that exist in the national economy.[130] The ALJ's decision regarding the number of alternative occupations must be supported by substantial evidence.[131]

Plaintiff argues that the ALJ's hypothetical failed to take into account the limitations set forth by her providers.[132] However, this argument merely restates Plaintiff's earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical properly accounted for the limitations supported by the record.[133]

## IV. Conclusion

---

[127] AR 28, 311. *See also* AR 828 (indicating that Plaintiff "would like to go back into being a care provider again" and had thought about applying to jobs as a driver).
[128] *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. § 416.920(g).
[129] *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999).
[130] *See Bayliss*, 427 F.3d at 1218.
[131] *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012).
[132] ECF No. 14 at 19–20.
[133] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

Having reviewed the ALJ's findings and the record as a whole, the Court concludes that the ALJ did not err in weighing medical opinions, rejecting Plaintiff's subjective testimony, or in issuing findings at step five.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2. The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED.**

3. The Clerk's Office is to enter **JUDGMENT** in favor of Defendant.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this __12th__ day of August 2019.

s/Edward F. Shea<br>
EDWARD F. SHEA<br>
Senior United States District Judge